UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY ROYCE KEY,

                Plaintiff,

v.

CITY OF DETROIT, *et al.*,

                Defendants.
_____/

Civil Action No. 24-10458

Susan K. DeClercq
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 15, 20)**

*Pro se* plaintiff, Kelly Royce Key ("Key") brings this lawsuit against the City of Detroit (the "City") and the Wayne County Treasurer ("Wayne County") (collectively, "Defendants") based on the foreclosure of Key's[1] property. (ECF No. 1).

Presently before the Court are (1) the City's motion to dismiss (ECF No. 15), which has been fully briefed (ECF Nos. 16, 19, 23); and (2) Wayne County's motion to dismiss (ECF No. 20), which has been fully briefed (ECF Nos. 24, 31, 32).[2]

The Court finds that oral argument will not aid it in resolving these motions, and declines to hold a hearing. *See* E.D. Mich. LR 7.1(f)(2).

---

[1] From prior litigation Key has brought in this court, Case No. 22-10849, *Key v. City of Detroit*, the Court is aware that Key prefers to be referred to as "Key," and not by any pronoun.

[2] Also pending before the Court is Key's "Motion for Videoconferencing Technology" (ECF No. 12), in which Key requests "the use of videoconferencing technology" for court proceedings. Because, for the reasons discussed below, the Court recommends dismissing Key's claims, Key's motion is moot. Accordingly, the Court hereby **DENIES AS MOOT** Key's motion for videoconferencing technology **(ECF No. 12)**.

## I.  RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the City's and Wayne County's Motions to Dismiss **(ECF Nos. 15, 20)** be **GRANTED.**

## II.  REPORT

### A.  Background

In Key's complaint, Key alleges that, in 2014, Key was informed by Key's brother Giles that their father had passed away. (ECF No. 1, PageID.2, ¶ 7). After Key's father's passing, in 2018, Key and Key's mother Ruth, "worked on securing" Key's "childhood home" at "3207 (Parcel 21050038) and 3201 (Parcel 21050029) Lenox" (the "Property") in Detroit, Michigan, in Key's mother's name. (*Id.* ¶ 8). Key alleges that the Property was secured "through the Probate Court in 2018 in Ruth's name," but that "the Deed was not given to Ruth." (*Id.* ¶ 9). Key alleges that Key then proceed to notify "all of the companies listed on the Acknowledgement notice sent by Wayne," including "the City's Civil Rights," "City help desk," and "City Assessor's office." (*Id.* ¶ 10).

Key alleges that, in October 2020, Key's mother Ruth passed away, and Key "submitted a claim" to the Property. (*Id.* ¶ 11). Key alleges that, in April 2022, Key also "entered into a discrimination lawsuit with the City of Detroit." (*Id.* ¶ 12). In December 2023, Key was allegedly notified via a Notice of Assessment that Key, Key's brother Giles, and Loren Preston Key ("Loren") were "the new owners" of the Property, "but [it] changed the residence from 3207 Lenox to 3201 Lenox but no deed was received for Ruth or for Loren, Giles, and Key." (*Id.* ¶ 13).

It appears that at some point the Property went into foreclosure, and Key alleges

that Key "submitted objections to the foreclosure . . . after a Show Cause Hearing notification in the Wayne County Circuit Court listed as Case No. 23-007784-CH." (*Id.* ¶ 14). Key alleges that, on February 21, 2024, Key "attended the hearing via Zoom . . . in front of Honorable Chief Judge Patricia P. Fresard . . . at which Key addressed the court about the MOAHR case no. 24-000247 and objections to the foreclosure." (*Id.* ¶ 15). After the hearing, Key alleges Key filed a "Motion for Reconsideration." (*Id.* ¶ 16).

Based on the above allegations, Key raises three separate claims. In Count I, Key alleges, in full, that "[t]he person appointed to decide whether the tax shall be levied under a law of this state acted without jurisdiction or did not impose the tax in question," "[t]he property was exempt from the tax in question or was not legally levied," and "[t]he tax was assessed fraudulently." (*Id.* ¶¶ 17-19). In Count II, Key alleges Key was retaliated against in violation of Michigan's Elliot-Larson Civil Rights Act, M.C.L § 37.2101, *et seq.* ("ELCRA"), because "Defendants knew of Key's protected activity" (*i.e.*, Key's prior employment "discrimination lawsuit"), Key "suffered adverse actions, including, but not limited to: being made to spell out gender to representatives of Wayne, being harassed by Wayne Sheriffs during a payment to the Wayne Treasurers assess taxes while at a kiosk, and having to proceed in court proceedings to get answers to questions raised by Ruth and Key," and "[t]here is a connection between the protected activity and the action Wayne and the City performed." (*Id.* ¶¶ 21-24). In Count III, Key alleges violations of "Title VII of the Civil Rights Act" when Key "was harassed and denied service by City and Wayne employees and representatives throughout this process," including "unwelcome comments and conduct of an offensive nature directed at [Key]." (*Id.* ¶¶ 29-30). Key alleges that

3

Key "complained about the harassment and discrimination to top officials for Wayne and City and has not been addressed," "Defendants did not promptly remedy ongoing harassment when [Key] complained," "Defendants permitted harassment to continue," and "[t]he conduct[] of Defendant's agents and employees harassing Plaintiff constitutes discrimination in rights." (*Id.* ¶¶ 31-34).

The City and Wayne County have each filed a motion to dismiss, arguing that Key fails to state a claim for relief, and that this Court lacks jurisdiction over Key's challenges to the assessment and levy of the real property taxes Key challenges.

**B.**     **Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

**C.    Analysis**

*Count I – Tax Claims*

In Count I, Key alleges that the tax on the Property was "assessed fraudulently" and was "not legally levied." (ECF No. 1, PageID.3). Both the City and Wayne County seek dismissal of Count I, arguing that any challenge to the assessment of real property taxes is barred by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341. (ECF No. 15, PageID.37-39;

5

ECF No. 20, PageID.66-67).

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "Although the TIA mentions only injunctions, its policy of comity bars declaratory judgment and 42 U.S.C. § 1983 damage actions as well." *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 378 (6th Cir. 1993). Thus, a plaintiff may not avoid the jurisdictional limitations of the TIA by simply characterizing a state or local tax collection dispute as a Section 1983 claim or a violation of due process. *See Pegross v. Oakland Cnty. Treasurer*, 592 F. App'x 380, 381 (6th Cir. 2014) (*citing Schneider Transp., Inc. v. Cattanach*, 657 F.2d 128, 131 (7th Cir. 1981) ("It is well settled that allegations of deprivations of constitutional rights do not render the [TIA] inapplicable."); *Mandel v. Hutchinson*, 494 F.2d 364, 366 (9th Cir. 1974) (holding that "[t]he jurisdictional bar of" the TIA could not be overcome by mounting a constitutional challenge to the state's tax collection scheme brought under § 1983)).

Here, to the extent Key contests the assessment, levy, and attempted collection of real property taxes on the Property, Key's allegations squarely raise the type of claim over which this Court lacks subject matter jurisdiction under the TIA. *See Miles v. Wayne Cnty. Treasurer*, 2025 WL 359322, at *5 (E.D. Mich. Jan. 31, 2025) (plaintiff's claims challenging the assessment, levy, and attempted collection of property taxes that led to foreclosure on his properties were barred by the TIA). While Key argues in response to Wayne County's motion that "[t]he purpose of this case is not to discuss the foreclosure," and that "[t]his case is about the Constitutional Rights of Key that [were] violated during

6

the process leading up to" Key's foreclosure hearing, the law is clear that merely characterizing a taxing authority's conduct as "unconstitutional" is not enough to establish this Court's subject matter jurisdiction over a claim that is otherwise subject to the TIA's jurisdictional bar. *See, e.g., Pegross*, 592 F. App'x at 381 ("mere citations to 42 U.S.C. § 1983 or the Fourteenth Amendment [can]not create federal court jurisdiction, [if] the claims [as] alleged [are] barred by principles of comity and the TIA"); *Rafaeli, LLC v. Wayne Co.*, No. 14-13958, 2015 WL 3522546, at *6-9 (E.D. Mich. June 4, 2015) (state court remedies were available to plaintiff alleging violation of due process, takings, and equal protection claims; thus, plaintiff's claims were barred by TIA).

The Court notes that, notwithstanding the above analysis, the TIA would not apply if Key can show that a "plain, speedy and efficient" remedy did not exist in the state courts for Key's challenge. Where a state provides a mechanism for an aggrieved taxpayer to seek a "full hearing and judicial determination" at which "any and all constitutional objections to the tax" can be raised, it affords a "plain, speedy and efficient" remedy. *Rosewell v. La Salle Nat'l Bank*, 450 U.S. 503, 515 n.19 (1981). The relevant portions of Michigan's General Property Tax Act make clear that such a remedy was available to Key in the Michigan state courts. *See* M.C.L. § 211.78k(2), (3); *Miles,* 2025 WL 359322, at *5-6 (finding that a plain, speedy, and efficient remedy in the Michigan state courts was available to plaintiff on his tax claims against the Wayne County Treasurer).

In sum, to the extent Key's complaint challenges the assessment and collection of a state tax in Count I, a plain, speedy and efficient remedy in the Michigan state courts was available to Key to challenge those matters, and the TIA therefore divests this Court of

subject matter jurisdiction. Accordingly, Count I should be dismissed.

*Count II – ELCRA Retaliation Claims*

In Count II, Key alleges that Key suffered "adverse actions" by Defendants in "retaliation" for Key's "protected activity," in violation of the ELCRA. (ECF No. 1, PageID.4). Both the City and Wayne County seek dismissal of Count II for failure to state a claim. (ECF No. 15, PageID.36-37; ECF No. 20, PageID.64-66).

The ELCRA provides that:

> Two or more persons shall not conspire to, or a person shall not ... [r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

Mich. Comp. Laws § 37.2701.

A plaintiff may prove retaliation through either direct or circumstantial evidence. *See Browning v. Franklin Precision Indus., Inc.*, No. 23-5406, 2023 WL 8437235, at *3 (6th Cir. Dec. 5, 2023). If a plaintiff relies on circumstantial evidence, his claims are evaluated under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 334 (6th Cir. 2021). To establish a *prima facie* case of retaliation under the ELCRA, a plaintiff must show that: (1) plaintiff engaged in protected activity; (2) the defendant was aware of the protected activity; (3) the defendant took an action that was "materially adverse" to the plaintiff; and (4) there is a causal connection between the plaintiff's protected activity and the defendant's adverse action. *Id.* at 343-44.

A plaintiff "is not required to state a *prima facie* case to survive a Motion to Dismiss,

even though it may be helpful to their case." *Whitehead v. Sterling Jewelers, Inc.*, 648 F. Supp. 3d 951, 959 (W.D. Tenn. 2023) (citing *Davis v. Prison Health Servs.*, 679 F.3d 433, 439-40 (6th Cir. 2012)). Instead, he "need only satisfy the plausibility standard of *Twombly*." *Menge v. City of Highland Park*, No. 21-10152, 2022 WL 54544, at *8 (E.D. Mich. Jan. 5, 2022); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."). Nonetheless, Key must allege "sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference" that the City or Wayne County discriminated against Key with respect to Key's protected activity. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quotations omitted).

Even liberally construed, Key's complaint fails to allege more than the type of "naked assertion[s] devoid of further factual enhancement" prohibited by *Twombly* and *Iqbal*. *Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 557. As to Key's claim against Wayne County, while Key alleges that "Defendants knew" that Key filed a "discrimination lawsuit with the City of Detroit on or around April 2022," and that Key "suffered adverse actions" from "representatives of Wayne," there are simply no allegations that Key's lawsuit *against the City* had any bearing or connection to any actions taken *by Wayne County* related to the foreclosure of the Property for Key's non-payment of property taxes. Indeed, Michigan's General Property Tax Act, M.C.L. § 211.78, makes clear that foreclosures are initiated by a "foreclosing government unit," which is not the City, but either "[t]he treasurer of a county" or the State of Michigan "if the county . . . elected . . . to have [Michigan] foreclose

9

property under this act." *Fox v. Saginaw Cnty., Michigan by Bd. of Commissioners*, No. 21-1108, 2022 WL 523023, at *1 (6th Cir. Feb. 22, 2022) (quoting M.C.L. § 211.78(8)(a)). Key's allegation that "[t]here is a connection between the protected activity and the action Wayne and the City performed" with respect to the Property is wholly conclusory and insufficient to raise a plausible claim of retaliation under the ELCRA.

Key's claim against the City fares no better as Key's complaint contains no factual allegations of an adverse action taken by the City on account of Key's protected activity. And, even if the Court were to consider the assertion in Key's response brief that the City did not provide Key with "programs to help reduce property tax burdens" (ECF No. 16, PageID.41), there are no allegations in Key's complaint showing Key's eligibility for an assistance program, much less that Key requested or was denied any such program. While Key attaches to Key's response a copy of an "Assistance Application" for "MI Bridges" in an apparent effort to support Key's claim against the City, the application reflects that Key submitted it through the *State of Michigan's* website (www.michigan/gov/mibridges), and that it is dated February 22, 2024, which is almost two years *after* Key's "protected activity" of filing the prior employment discrimination lawsuit against the City on April 20, 2022.  (*See* ECF No. 16, PageID.46).  Thus, this evidence has no bearing on Key's ELCRA retaliation claim against the City.  In sum, there are simply no allegations in Key's complaint from which to reasonably infer a causal connection between Key's protected activity and the City's alleged failure to provide Key with a real property tax assistance

10

program.³

Accordingly, Key's ELCRA claims against the City and Wayne County in Count II should be dismissed for failure to state a claim.

*Count III – Discrimination Claims*

In Count III, Key alleges that Defendants discriminated against Key under "Title VII of the Civil Rights Act" because they "harassed and denied service" to Key "throughout this process" of attempting to "secure" the Property. (ECF No. 1, PageID.5). However, in Key's response and sur-response to the City's motion to dismiss, Key elaborates that Key "has been in contact with the City of Detroit Assessor's Office . . . [and] the Probate Court to obtain the proper documents to [] stay in our home and avoid foreclosure through the City's Property Tax Assistance service that helps if you are struggling to pay your city property taxes," and that "LGBTQ people are protected from housing discrimination by federal law." (ECF No. 16, PageID.41). Thus, rather than alleging a claim under Title VII, which applies to *employment* discrimination,⁴ Key appears to be alleging a claim under Title VI, which prohibits "discrimination under any program or activity receiving Federal financial assistance" on the ground of "race, color, or national origin." 42 U.S.C. § 2000d; *see Darden v. Montgomery Cnty. Bd. of Commissioners*, No.

---

³ To the extent Key argues that Defendants violated the ELCRA by discriminating against Key based on Key's "LGBTQ status," Key's complaint contains a single, vague allegation that Key was "made to spell out gender to representatives of Wayne." (ECF No. 1, PageID.4). Such vague allegation falls well short of raising a plausible claim that Defendants discriminated against Key based on Key's LGBTQ status. *See Iqbal,* 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

⁴ Key's complaint raises no allegations whatsoever related to any current or prior employment with the City or Wayne County.

11

23-3501, 2024 WL 3814048, at *4 (6th Cir. Aug. 14, 2024). In other words, Key appears to argue that Defendants violated Title VI by "[n]ot providing programs to help reduce property tax burdens," such as the "City's Property Tax Assistance service," based on Key's "LGBTQ status." (ECF No. 16, PageID.42; ECF No. 23, PageID.74). Key fails to state a Title VI claim, for several reasons.

First, Key fails to make out a Title VI claim because Key's complaint does not allege that the City, Wayne County, or any of their programs received federal funding. *See Darden v. Montgomery Cnty. Bd. of Commissioners*, No. 23-3501, 2024 WL 3814048 (6th Cir. Aug. 14, 2024) ("We agree with the district court that Darden failed to make out a Title VI claim because his complaint never alleged that any defendant received federal funding. Darden now argues that the district court should have known that Montgomery County Children Services receives federal funding. It is, however, a plaintiff's burden to plead facts to support each aspect of his Title VI claim."); *Wise v. E. Grand Rapids Dep't of Pub. Safety*, No. 1:20-CV-1262, 2022 WL 4124948 (W.D. Mich. Aug. 1, 2022) ("It is axiomatic that a plaintiff cannot sue a defendant under Title VI without establishing that the defendant receives federal funds.").

Second, the Sixth Circuit has concluded that "Title VI only applies to discrimination on the basis of race, color, or national origin," and "does not provide a cause of action" for sex or gender discrimination because the text of 42 U.S.C. § 2000d "does not say anything about sex or gender." *Foster v. Michigan*, 573 F. App'x 377, 388 (6th Cir. 2014); *see also, e.g.*, *Johnson v. Knox Cnty. Sch.*, 2022 WL 18283265, at *5 (E.D. Tenn. Nov. 10, 2022) ("Title VI does not address discrimination on the basis of age, sex or gender, and therefore

does not provide a cause of action for such claims."). Thus, it follows that there is similarly no cause of action for Key to bring a claim under Title VI based on Key's alleged "LGBTQ status."

Accordingly, Key has failed to state a claim for relief in Count III, and it should be dismissed.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the City's and Wayne County's motions to dismiss **(ECF Nos. 15, 20)** be **GRANTED**.

Dated: February 24, 2025  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections that raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 24, 2025.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager